| | |
|---|---|
| CHARLES ANTHONY REID<br>264 Summer Ranch Dr<br>Fuquay Varina, NC 27526 ) ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT FOR DAMAGES** |
| ) | |
| SEGRA ) | **JURY DEMAND ENDORSED** |
| 2501 Blue Ridge Rd Suite 350 ) | **HEREIN** |
| Raleigh, NC 27607 ) | |
| ) | |
| **Serve also:** ) | |
| SEGRA ) | |
| 11215 N. Community House Rd, 10th ) | |
| Floor ) | |
| Charlotte, NC 28277 ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Charles Anthony Reid, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES

1. Reid is a resident of the city of Fuquay Varina, county of Wake, state of North Carolina.

2. Segra is a foreign corporation that operates a place of business located at 2501 Blue Ridge Rd Suite 350, Raleigh, NC 27607.

3. Segra was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 2000e-2 *et seq*.

4. Segra was at all times hereinafter mentioned, a "person" within the meaning of 29 USC § 203(a).

## JURISDICTION & VENUE

5. Segra hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Segra comports with due process.

6. This cause of action arose from or relates to the contracts of Segra with North Carolina residents, thereby conferring specific jurisdiction over Segra.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

8. This court has supplemental jurisdiction over Reid's state law claims because they arise from the same common nucleus of operative fact.

9. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATIVE PROCESS

10. Within 180 days of the conduct alleged below, Reid filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2025-00144 against Segra operating at 2501 Blue Ridge Rd Suite 350, Raleigh, NC 27607.

11. On or about 1November 29, 2024, the EEOC issued and mailed a Notice of Right to Sue letter to Reid regarding the Charges of Discrimination brought by Reid against Segra in EEOC Agency Charge No. 433-2025-00144.

12. Reid received him Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Reid has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Reid has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## TITLE VII COVERAGE

15. At all times referenced herein, Segra was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

16. At all times referenced herein, Reid was an "employee" within the meaning of 42 U.S.C. § 2000e(f), in that she was an individual employed by an employer.

## **FACTS**

17. Reid is male.

18. Reid is a former employee of Segra.

19. Segra hired Reid on or about February 15, 2021.

20. Reid worked for Segra as a Mid-Market Account Manager.

21. When Reid began working for Segra, he informed Segra that he was also working for Nutanix.

22. Reid's role with Nutanix did not compete with his role at Segra.

23. Reid's role with Nutanix did not detract from Reid's performance at Segra.

24. Reid was capable of performing both roles to meet each employer's satisfaction.

25. Reid in fact performed both roles to meet each employer's satisfaction.

26. Reid informed Daniel Eskew that he was working for Nutanix.

27. Daniel Eskew was Segra's Vice President at the time Reid informed Segra that he was working for Nutanix.

28. Eskew did not state that Reid's employment with Nutanix violated Segra's policies.

29. Eskew did not terminate Reid's employment with Segra after Reid informed him that he was working for Nutanix.

30. Reid informed Jarion Manning that he was working for Nutanix.

3

31. Manning was Reid's direct supervisor at the time Reid informed Segra that he was working for Nutanix.

32. Manning did not state that Reid's employment with Nutanix violated Segra's policies.

33. Manning did not terminate Reid's employment with Segra after Reid informed him that he was working for Nutanix.

34. Upon information and belief, Reid's employment with Nutanix was not a violation of Segra's policies.

35. After Reid informed Eskew and Manning about his employment with Nutanix, Reid continued to work for Segra without issue.

36. Eventually Segra assigned Reid a new manager.

37. Reid's new manager was Jackie Beauchemin.

38. As Reid's new manager, Beauchemin was Reid's supervisor.

39. Beauchemin had the authority to fire and discipline Reid.

40. In or around December, Beauchemin began sexually harassing Reid.

41. On or about December 6, 2023, Beauchemin approached Reid at a company event.

42. After approaching Reid, Beauchemin stated that she needed to speak with Reid.

43. Reid responded jokingly, "Oh no, what did I do now?"

44. Beauchemin responded to Reid's joke by stating, "That's right, you're in trouble. Assume the position."

45. After Beauchemin told Reid to "assume the position" Reid was concerned.

46. Telling someone to "assume the position" is an instruction to bend over to be spanked.

47. An instruction to "assume the position" can reference bending over to be spanked in a sexual way.

48. Reid responded to Beauchemin's instruction to "assume the position" by asking, "What position is that?"

49. Beauchemin replied to Reid asking what position she meant by saying "You know you're always going to be on top."

50. In this context, stating that Reid would always be on top meant that Reid would always be on top while having sex.

51. Beauchemin's statement about Reid always being on top contextualizes his instruction to Reid to "assume the position" as sexual.

52. Beauchemin's instruction to "assume the position" and comment that Reid would "always be on top" constitute sexual harassment. ("First Instance of Sexual Harassment")

53. Beauchemin's First Instance of Sexual Harassment was severe.

54. An ordinary person in Reid's position would be offended by Beauchemin's First Instance of Sexual Harassment.

55. Reid was offended by Beauchemin's First Instance of Sexual Harassment.

56. An ordinary person in Reid's position would be humiliated by Beauchemin's First Instance of Sexual Harassment.

57. Reid was humiliated by Beauchemin's First Instance of Sexual Harassment.

58. Beauchemin's First Instance of Sexual Harassment interfered with Reid's ability to perform his duties.

59. Reid then opposed Beauchemin's First Instance of Sexual Harassment.

60. The conversation about Beauchemin's First Instance of Sexual Harassment ended there because another person was present.

61. On or about December 13, 2023, Beauchemin told Reid that he needed to be more on top of his expense reports.

62. After telling Reid to be more on top of his expense reports, Beauchemin spanked Reid. ("Second Instance of Sexual Harassment").

63. Beauchemin's Second Instance of Sexual Harassment was severe.

64. Beauchemin's Second Instance of Sexual Harassment was pervasive.

65. An ordinary person in Reid's position would be offended by Beauchemin's Second Instance of Sexual Harassment.

66. Reid was offended by Beauchemin's Second Instance of Sexual Harassment.

67. An ordinary person in Reid's position would be humiliated by Beauchemin's Second Instance of Sexual Harassment.

68. Reid was humiliated by Beauchemin's Second Instance of Sexual Harassment.

69. Beauchemin's Second Instance of Sexual Harassment interfered with Reid's ability to perform his duties.

70. Reid immediately opposed Beauchemin's Second Instance of Sexual Harassment and asked Beauchemin to stop.

71. Beauchemin responded to Reid's request for his to stop by stating "If you don't want to be treated that way, then put in your expense reports on time."

72. Beauchemin did not write Reid up for the expense reports at that time.

73. Beauchemin's sexual harassment continued for the duration of Reid's employment.

74. In or around June, 2024 Reid had a meeting with his team.

75. Beauchemin was in the meeting with Reid's team.

76. During the meeting, conversation went from work topics onto LGBTQ+ topics.

77. During the meeting, Beauchemin and other members of the team expressed discriminatory opinions against LGBTQ+ individuals.

78. In particular, Beauchemin stated that trans-women are not women.

79. Reid was aware of LGBTQ+ individuals present at the meeting.

80. Reid noticed those individuals being visibly uncomfortable at the meeting.

81. Reid opposed Beauchemin's discrimination.

82. Reid opposed Beauchemin's discrimination by stating that everyone should be treated with decency and respect, LGBTQ+ individuals included. ("Reid's First Opposition of Beauchemin's LGBTQ+ Discrimination")

83. After the meeting concluded, Reid approached Beauchemin and told his that his actions were inappropriate and discriminatory against LGBTQ+ individuals. ("Reid's Second Opposition of Beauchemin's LGBTQ+ Discrimination")

84. On or about July 17, 2024, Beauchemin terminated Reid's employment with Segra.

85. Beauchemin's purported reason for terminating Reid's employment with Segra was for having his position with Neutanix.

86. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Reid.

87. Segra's purported reason for Reid's termination is pretext for discrimination.

88. Segra's purported reason for Reid's termination is pretext for retaliation.

89. Segra's purported reason for Reid's termination is pretext for retaliation for Reid's First Opposition of Beauchemin's LGBTQ+ Discrimination.

90. Segra's purported reason for Reid's termination is pretext for retaliation for Reid's Second Opposition of Beauchemin's LGBTQ+ Discrimination.

7

91. Segra's purported reason for Reid's termination is pretext for retaliation for opposing Beauchemin's sexual harassment.

92. Upon information and belief, Reid's termination of employment, Defendants hired or retained an individual outside of Reid's protected class to replace Reid.

93. After Segra terminated Reids' employment, it failed to pay Reid's earned commissions.

94. As a result of Defendant's conduct, Reid suffered, and will continue to suffer damages.

## COUNT I: <u>SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.</u>

95. Reid restates each and every paragraph of this complaint as if it were fully restated herein.

96. Pursuant to 42 U.S.C. § 20002e-2(a)(1), it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

97. Defendant treated Reid differently than other similarly-situated employees based on his gender.

98. Defendant discriminated against Reid on the basis of gender throughout his employment.

99. Defendant terminated Reid's employment on the basis of his gender.

100. As a result of Defendant's discrimination against Reid in violation of 42 U.S.C. § 2000e-2(a)(1), Reid has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Reid to compensatory monetary relief.

101. As a result of Defendant's discrimination against Reid in violation of 42 U.S.C. § 2000e-2(a)(1) and (2), Reid has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

8

102. To remedy the violations of the rights of Reid secured by 42 U.S.C. § 2000e-2(a)(1) and (2), Reid requests that the Court award him the relief prayed for below.

## COUNT II: <u>HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEXUAL HARASSMENT</u>

103. Reid restates each and every paragraph of this complaint as if it were fully restated herein.

104. Reid was subjected to unwelcome sexual harassment in the form of sexual comments, inappropriate sexual touching, and sexual advances.

105. Defendant knew or should have known of the harassing conduct against Reid by Beauchemin.

106. Defendant condoned, tolerated, ratified, and were the source of this harassing conduct.

107. Beauchemin's sexually harassing conduct of Reid was severe and/or pervasive.

108. Beauchemin's sexually harassing conduct was offensive to Reid.

109. Beauchemin's sexually harassing conduct interfered with Reid's ability to perform his job duties.

110. Beauchemin's offensive and sexually harassing conduct created a hostile and/or abusive work environment for a reasonable person similarly situated to Reid.

111. Beauchemin's sexual harassment of Reid occurred while he was acting in the course and scope of his employment.

112. Reid's supervisors had knowledge of Beauchemin's sexual harassment and failed to take any corrective or remedial actions.

113. Reid's supervisors committed sexual harassment against Reid and failed to take any corrective or remedial actions.

114. Reid suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2(a)(1) and (2).

9

115. In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of Reid, thereby entitling Reid to an award of punitive damages.

116. To remedy the violations of the rights of Reid secured by 42 U.S.C. § 2000e-2(a)(1) and (2), Reid requests that the Court award him the relief prayed for below.

## COUNT III: <u>RETALIATION IN VIOLATION OF TITLE VII</u>

117. Reid restates each and every paragraph of this complaint, as if it were fully restated herein.

118. Pursuant to 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

119. Discrimination on the basis of sex includes discrimination on the basis of sexual orientation.

120. On or about December 6, 2023, Reid opposed sex discrimination.

121. On or about December 13, 2023, Reid opposed sex discrimination.

122. In or around June, 2024, Reid opposed sex discrimination on the basis of sexual orientation twice.

123. Reid opposed sex discrimination in Reid's First Opposition of Beauchemin's LGBTQ+ Discrimination.

124. Reid opposed sex discrimination in Reid's Second Opposition of Beauchemin's LGBTQ+ Discrimination.

125. After Reid complained about sex discrimination, Defendant failed to take prompt remedial action following his complaints of race discrimination.

126. Defendant ratified the sex discrimination that Reid opposed and suffered.

127. On or about July 17, 2024, Segra terminated Reid's employment.

128. Segra terminated Reid in retaliation for opposing discrimination.

129. As a direct and proximate result of Segra's conduct, Reid suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: <u>BREACH OF CONTRACT</u>

130. Reid restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Upon Reid's entry into an agreement for employment with Segra, both Parties assented to an employment contract.

132. The employment contract is supported by consideration, where Reid provided labor and Segra provided commissions and a salary.

133. Segra failed to provide Reid the commissions that he had earned upon his termination.

134. The contract's terms for payment are supplemented by Segra's policies.

135. Segra's policies for payment were that payment was to be provided every two weeks.

136. Upon information and belief, Segra's policies do not contain a term for forfeiture of commissions upon termination.

137. Reid was not informed of a term that commissions would be forfeited upon termination.

138. Segra has not provided the final amounts of Reid's commissions.

139. By failing to provide the final amounts of Reid's commissions, Segra has breached the employment contract it had with Reid.

140. As a direct and proximate result of Segra's breach of its contract with Reid, he has suffered damages.

## DEMAND FOR RELIEF

WHEREFORE, Charles Anthony Reid demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Reid for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(c) An award of reasonable attorneys' fees and non-taxable costs for Reid's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*

Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Charles Anthony Reid*

## <u>JURY DEMAND</u>

Plaintiff Charles Anthony Reid demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)